UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, THE
COMMONWEALTH OF MASSACHUSETTS,
AND THE STATE OF NEW YORK, EX REL.
LAWRENCE KLEIN, RELATOR,

                                Plaintiff,

        v.                                                  Civil Case No.  1:11-CV-35, DNH-RFT

EMPIRE EDUCATION CORPORATION, and
DOES 1-50,

                                Defendants.

# MEMORANDUM OF LAW IN SUPPORT
# OF DEFENDANTS' MOTION TO DISMISS

**HODGSON RUSS LLP**
*Attorneys for Defendants*
Daniel C. Oliverio, Bar Roll No. 517878
John L. Sinatra, Jr., Bar Roll No. 517861
Michelle L. Merola, Bar Roll No. 514446
Kevin J. Espinosa, Bar Roll No. 517877
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

# TABLE OF CONTENTS

PAGE

Preliminary Statement..................................................................................................1

Allegations of The Complaint.......................................................................................2

Argument .....................................................................................................................3

POINT I.     Klein's Complaint Fails
             to State a Cause of Action..................................................................4

  A.             Applicable Rule 12(b)(6) Standard.................................................4

  B.             Klein's Complaint Fails to Allege Non-Compliance with a Statute or
                 Regulation
                 that is an Express Prerequisite to Receiving Payment from the Federal
                 Government...................................................................................5

  C.             Klein's Fourth Cause of Action Must be Dismissed
                 Because Adverse Employment Actions are Not Prohibited by
                 the Incentive Compensation Ban in the Higher Education Act ...................10

  D.             Klein's Claims under the New York False Claims Act and
                 the Massachusetts False Claims Act Should be Dismissed .........................12

    1.               Dismissal of Klein's Federal False Claims Act
                     Claims Requires Dismissal of His State Law Claims...............................12

    2.               Klein Does Not Identify Any Claims for
                     Payment to New York or Massachusetts ....................................................13

POINT II.    Klein's Complaint Fails to Plead Fraud with Particularity as Required by
             Federal Rule of Civil Procedure 9(b) and Should be Dismissed ......................14

  A.             Rule 9(b) Standard As Applied to False Claims Act Claims.........................14

  B.             Klein's Complaint Fails to Allege Any of the Requisite
                 Factual Predicate for a False Claims Act Claim .............................................16

    1.               Klein Does Not Allege Any Facts Supporting Violations
                     of the Statutes or Regulations Underlying His Claims ..............................16

    2.               Klein Does Not Identify Any Actual False Certifications Purportedly
                     Made to the Federal Government or Any Facts Supporting A
                     Fraudulent Intent by Empire Education in Making Those Certifications..21

i

## <u>TABLE OF CONTENTS - cont'd</u>

<u>PAGE</u>

3.      Klein Does Not Identify Any
Claims for Payment of Federal Funds ......................................................22

C.      Klein's Claims Against "Does 1-50" Must Be Rejected As Well ................24

Conclusion .........................................................................................................................25

# TABLE OF AUTHORITIES

PAGE

## FEDERAL CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S.Ct. 1937 (2009) ........................................................................4, 5, 12, 16

*B&M Linen, Corp. v. Kannegiesser, USA, Corp.*,
  679 F. Supp. 2d 474 (S.D.N.Y. 2010) ...................................................................................21

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955 (2007) .................................................................................5, 12

*Forkell v. Lott Assisted Living Corp.*,
  2012 U.S. Dist. LEXIS 72898 (S.D.N.Y. May 21, 2012) .......................................................13

*Gold v. Morrison-Knudsen Co.*,
  68 F.3d 1475 (2d Cir. 1995).......................................................................................................14

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
  227 F.3d 8 (2d Cir. 2000) ...........................................................................................................21

*Kennedy v. The Trs. of the Testamentary Trust of the Last Will and Testament of
  President John F. Kennedy*,
  406 Fed. Appx. 507 (2d Cir. 2010) ............................................................................................4

*Love v. Career Educ. Corp.*,
  2012 U.S. Dist. LEXIS 67762 (E.D. Mo. May 15, 2012)........................................................21

*Luckey v. Baxter Healthcare Corp.*,
  183 F.3d 730 (7th Cir. 1999) ....................................................................................................1

*Massachusetts v. Schering-Plough Corp.*,
  779 F. Supp. 2d 224 (D. Mass. 2011) ("Massachusetts courts look for guidance in
  interpreting the MFCA to cases and treatises interpreting the FCA.")....................................13

*Reddington v. Staten Island Univ. Hosp.*,
  511 F.3d 126 (2d Cir. 2007)........................................................................................................4

*South Road Assocs. v. Int'l Bus. Mach. Corp.*,
  216 F.3d 251 (2d Cir. 2000)........................................................................................................4

*U.S. ex rel. Blundell v. Dialysis Clinic, Inc.*,
  2011 U.S. Dist. LEXIS 4862 (N.D.N.Y. Jan. 19, 2011)...............................4, 8, 12, 15, 16, 23

*U.S. ex rel. Bowan v. Educ. Am., Inc.*,
  116 Fed. Appx. 531 (5th Cir. 2004)........................................................................8

*U.S. ex rel. Branigan v. Bassett Healthcare Network*,
  234 F.R.D. 41 (N.D.N.Y. 2005)...........................................................................15

*U.S. ex rel. Chapman v. Office of Children & Family Servs. of the State of New York*,
  2010 U.S. Dist. LEXIS 14938 (N.D.N.Y. Feb. 16, 2010), *aff'd*, 423 Fed. Appx. 104
  (2d Cir. 2011).............................................................................................14, 15

*U.S. ex rel. Ciaschini v. Ahold USA Inc.*,
  282 F.R.D. 27 (D. Mass. 2012)...........................................................................13

*U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*,
  785 F. Supp. 2d 303 (S.D.N.Y. 2011)................................................5, 6, 7, 8, 10

*U.S. ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*,
  937 F. Supp. 1039 (S.D.N.Y. 1996).................................................................14, 15

*U.S. ex rel. Diaz v. Kaplan Univ.*,
  2011 U.S. Dist. LEXIS 91587 (S.D. Fla. Aug. 17, 2011)...............................18, 19

*U.S. ex rel. Fago v. M&T Mortg. Corp.*,
  518 F. Supp. 2d 108 (D.D.C. 2007)....................................................................23

*U.S. ex rel. Gay v. Lincoln Tech. Inst., Inc.*,
  2003 U.S. Dist..................................................................................................9

*U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*,
  284 F. Supp. 2d 487 (S.D. Tex. 2003) ............................................................7, 23

*U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*,
  2007 U.S. Dist. LEXIS 63706 (S.D. Fla. Aug. 29, 2007).....................................24

*U.S. ex rel. Lee v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) .........................................................................11, 24

*U.S. ex rel. Lewis v. Walker et al.*,
  2007 U.S. Dist. LEXIS 68208 (M.D. Ga. Sep. 14, 2007)....................................24

*U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*,
  377 F.3d 145 (2d Cir. 2004)................................................................................3

*U.S. ex rel. Mikes v. Straus*,
  274 F.3d 687 (2d Cir. 2001)................................................................4, 5, 6, 7, 8, 9, 10

*U.S. ex rel. Pilecki-Simko v. Chubb Inst.*,
   2010 U.S. Dist. LEXIS 27187 (D.N.J. Mar. 22, 2010) .....................................18, 20

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
   2009 U.S. Dist. LEXIS 43438 (E.D.N.Y. May 22, 2009) ......................................14

*U.S. ex rel. Vigil v. Nelnet, Inc.*,
   639 F.3d 791 (8th Cir. 2011) ............................................................................7, 8

*U.S. ex rel. Wood v. Applied Research Assocs., Inc.*,
   328 Fed. Appx. 744 (2d Cir. 2009) ...........................................................14, 15, 22

**FEDERAL STATUTES**

20 U.S.C. § 1091 (2012) ...........................................................................................10

20 U.S.C. § 1092 (2012) ...........................................................................................10

20 U.S.C. § 1094 (2012) .......................................................................................9, 10

31 U.S.C. § 3729 (2012) .............................................................................................3

**RULES**

Fed. R. Civ. P. 9(b) .................................1, 4, 9, 12, 14, 15, 16, 18, 19, 21, 22, 23, 24, 25

Fed. R. Civ. P. 12(b)(6).............................................................4, 9, 11, 12, 13, 16

**REGULATIONS**

34 C.F.R. § 668.14 (2012) .....................................................................................2, 10

34 C.F.R § 668.72 (2012) ..........................................................................................10

34 C.F.R. § 668.74 (2012) .........................................................................................10

34 C.F.R. § 668.83 (2012) .........................................................................................10

**OTHER AUTHORITIES**

John T. Boese, *Civil False Claims and Qui Tam Actions* § 2.02[B][2] (2d Ed. 2005)..................23

## PRELIMINARY STATEMENT

Plaintiff, purported "whistleblower" Lawrence Klein, is proceeding alone against Empire Education Corporation ("Empire Education") and "Does 1-50," after the Government's non-intervention[1] decision in this defective and meritless False Claims Act case. This classically deficient case cries out for dismissal at this juncture.

The complaint fails on many fronts. First, the Second Circuit has already rejected Klein's theory of liability. In fact, it has made abundantly clear that a False Claims Act case cannot be based on a purportedly false certification of compliance with a statute that is a condition to participation in a federal funding program—as opposed to a condition for payment pursuant to the program. Second, Klein's fourth cause of action, based on purported adverse employment actions taken by Empire Education, does not even allege a violation of the underlying statute since adverse employment actions are not prohibited by the statute. Third, the complaint, merely tracking the language of federal statutes and regulations, falls far short of the well-established pleading standards under Rule 9(b). The complaint generally alleges false statements and misrepresentations to students without ever identifying a single false statement or student to whom the statement was made. Nor does it allege any facts sufficient to allow this Court to find that Empire Education intended to defraud the Government through purportedly false statements. The complaint is, as a matter of law, insufficient to state a claim under the

---

[1] Following an investigation into Klein's allegations, the United States filed a Notice of Election to Decline Intervention on September 17, 2012. Docket No. 18. As such, it appears that "the federal government is 100% satisfied with" Empire Education. *See Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999) (noting that declination by Federal Government demonstrates that Federal Government was satisfied that defendant's conduct was not illegal). The State of New York and the Commonwealth of Massachusetts have also declined to intervene in the action. Declaration of Michelle M. Merola, dated December 17, 2012, ¶¶ 4-5.

False Claims Act; it only sets forth a series of statutes and regulations, and then baldly alleges in conclusory form that Empire Education violated them.  The case should be dismissed under both Rule 12(b)(6) and Rule 9(b).

## ALLEGATIONS OF THE COMPLAINT

Empire Education is a higher education institution.[2]  Plaintiff Klein is the former Director of Career Services at its Pittsfield, Massachusetts campus.[3]  Empire Education terminated Klein in December 2009.[4]  Thereafter, he filed this False Claims Act ("FCA") complaint alleging that Empire Education falsely certified compliance with various federal statutes and regulations in order to participate in federal funding programs that provide students with government-guaranteed loans and government grants, specifically the Federal Pell Grant Program ("Pell"), the Federal Supplemental Educational Opportunity Grant Program ("FSEOG"), the Federal Perkins Loan Program ("Perkins"), and the Federal Family Education Loan Program ("FFELP") (collectively, "Title IV Programs").[5]

As a condition of participation in Title IV Programs, a postsecondary institution is required to enter into a written Program Participation Agreement ("PPA") with the Secretary of Education.[6]  Klein alleges that, by entering into this PPA, Empire Education certified to the federal government that it was in compliance with "all federal regulations, federal laws, state laws, and that [Empire Education] meet[s] the proper requirements of the accrediting agency in

---

[2]     Docket No. 1 (Complaint), ¶ 8.

[3]     Docket No. 1 (Complaint), ¶ 3.

[4]     Docket No. 1 (Complaint), ¶ 125.

[5]     *See generally* Docket No. 1 (Complaint).

[6]     34 C.F.R. § 668.14 (2012).

order to receive federal financial student loans."[7]   Klein argues that the certification in this PPA

was false because Empire Education misrepresents various facts to its current and prospective

students.[8]   Accordingly, Klein hypothesizes that each time a student of Empire Education made a

request to the Federal Government for funding pursuant to one of the Title IV Programs, a false

claim for payment was made.[9]

The Federal Government, as well as New York State and the Commonwealth of

Massachusetts, have all declined to intervene in this case.  Klein nevertheless presses on with his

meritless complaint.

## ARGUMENT

The False Claims Act is focused on the recovery of damages from those who

defraud the Federal Government.  The FCA, a statute dating to the Civil War era, was enacted to

combat overcharges by Government contractors.[10]   A company engaged in business with the

Government is liable under the FCA if it knowingly presents, or causes to be presented, false or

fraudulent claims for payment, or knowingly makes or uses false records or statements to get

false claims paid or approved.[11]   The statute is aimed solely at preventing fraud upon the

---

[7]      Docket No. 1 (Complaint), ¶ 18.

[8]      *See generally* Docket No. 1 (Complaint).

[9]      Docket No. 1 (Complaint), ¶¶ 44, 84, 99, 119.

[10]     *U.S. ex rel. Lissack v. Sakura Global Capital Mkts., Inc.*, 377 F.3d 145, 151-52 (2d Cir. 2004).

[11]     31 U.S.C. § 3729(a)(1)(A), (B) (2012).

Government, and is not a catch-all statute permitting individuals to litigate violations of other federal statutes and regulations.[12]

The FCA does not countenance a case like the one here.  At the outset, the complaint fails because it does not properly state a claim under the implied false certification theory of liability.  Moreover, it fails to allege fraud with the particularity required by Federal Rule of Civil Procedure 9(b).  Each independent reason for dismissal of the complaint will be discussed below.

### POINT I.   KLEIN'S COMPLAINT FAILS TO STATE A CAUSE OF ACTION

#### A.   Applicable Rule 12(b)(6) Standard

To survive a motion to dismiss under Rule 12(b)(6), the complaint must allege facts that, if true, would create a judicially cognizable cause of action.[13]  While a plaintiff's allegations are assumed to be true at this stage of the litigation, "bald assertions and conclusions of law will not suffice."[14]  Similarly, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to state a claim under Rule 12(b)(6).[15]  Rather, plaintiff must allege actual facts sufficient to sustain each separate element of its cause of

---

[12]   *U.S. ex rel. Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001) (noting that "the False Claims Act was not designed for use as a blunt instrument to enforce compliance" with all statutes and regulations); *U.S. ex rel. Blundell v. Dialysis Clinic, Inc.*, 2011 U.S. Dist. LEXIS 4862, at *45-46 (N.D.N.Y. Jan. 19, 2011) (same).

[13]   *South Road Assocs. v. Int'l Bus. Mach. Corp.*, 216 F.3d 251, 253 (2d Cir. 2000); *see also Kennedy v. The Trs. of the Testamentary Trust of the Last Will and Testament of President John F. Kennedy*, 406 Fed. Appx. 507, 509 (2d Cir. 2010).

[14]   *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 131 (2d Cir. 2007) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)).

[15]   *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 1940 (2009).

action to escape dismissal.[16]  And "the factual allegations must be enough to raise a right to relief above the speculative level."[17]  Klein's complaint is littered with conclusory statements of the elements of an FCA claim, without pleading actual facts sufficient to support a cause of action. But even if the allegations were supported by sufficient facts, Klein's theory of liability is legally insufficient and the complaint should, accordingly, be dismissed.

B.     **Klein's Complaint Fails to Allege Non-Compliance with a Statute or Regulation that is an Express Prerequisite to Receiving Payment from the Federal Government**

Klein relies exclusively on a "certification theory" of liability under the FCA.[18] Courts refer to the "certification theory" of liability as a "'legally false' certification."[19] Specifically, Klein contends that Empire Education falsely certified to the Federal Government that it complied with federal statutes and regulations in order to participate in Title IV Programs. He alleges that Empire Education should not have been allowed to participate in Title IV Programs and, as a result, all claims for payment by students of Empire Education pursuant to those programs were false under the FCA.

---

[16]   *Id.* at 678-79, 129 S.Ct. at 1949–50; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007).

[17]   *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1973-74.

[18]   There are three theories of FCA liability:  (1) a "factually false" theory under which a claim for payment is made to the government seeking payment for services that were never actually provided or for which the description of the goods or services provided is incorrect; and (2) two "legally false" or "certification" theories of liability, which are addressed in full in this memorandum.  *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 310-11 (S.D.N.Y. 2011).  The complaint does not contain any allegations that a factually false claim for payment was made to the federal government. *See generally* Docket No. 1 (Complaint).

[19]   *Mikes*, 274 F.3d at 696-97.

There are two types of "legally false" certifications: (1) express false certification; and (2) implied false certification.[20]  An express false certification is made where a claim for payment of funds by the federal government "falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment."[21]  In other words, an express false certification is made where, on the face of the claim for payment, the document certifies compliance with a federal statute or regulation that must be complied with before payment can be made.  "General certifications of compliance with the law *are insufficient*" to state an FCA claim.[22]

In contrast, an implied false certification exists where "the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment."[23]  That is, although the claim for payment does not, on its face, certify compliance with a federal statute or regulation, the claim for payment can only be made if, under the express terms of the statute or regulation, compliance is required before payment can be made.

Here, Klein does not allege that any requests for payment from the Federal Government expressly certified compliance with any federal statutes or regulations.  Indeed, Klein does not identify any actual claims for payment from the public fisc anywhere in his complaint, much less identify any particular statute that the claims for payment expressly

---

[20]     *Id.* at 697-99.

[21]     *Id.* at 698; *Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d at 315 (same).

[22]     *Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d at 315 (citing *U.S. ex rel. Conner v. Salina Reg. Health Ctr., Inc.*, 543 F.3d 1211, 1218-19 (10th Cir. 2008)) (emphasis added).

[23]     *Mikes*, 274 F.3d at 699.

certified compliance with.  Instead, Klein relies on the PPA (a document agreed to with the Secretary of Education separate and apart from any claim for payment) as the source of the false certification to the federal government.  The PPA is not, itself, a claim for payment to the federal government.  His claim is, therefore, based on the implied false certification theory.

Specifically, the complaint is based on the argument that, by aiding its students in seeking government guaranteed loans and grants, Empire Education was impliedly certifying that it met all conditions of the PPA, including compliance with various federal statutes and regulations.  The complaint, however, fails as a matter of law under the implied false certification theory.

The implied false certification theory applies in only "limited circumstances."[24] As the Second Circuit has noted, "caution should be exercised not to read [the implied false certification] theory expansively and out of context."[25]  "[I]mplied false certification is appropriately applied only when the underlying statute or regulation upon which the plaintiff relies *expressly* states the provider must comply in order to be paid."[26]  Courts have emphasized the "distinction between generally certifying compliance with applicable regulations and statutes governing ***participation*** in a program, as opposed to certifying compliance with a particular requirement that is a ***prerequisite to receiving or retaining payment*** under that program."[27]  As

---

[24]    *Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d at 311 (citing *Mikes*, 274 F.3d at 700).

[25]    *Mikes*, 274 F.3d at 699.

[26]    *Id.* at 700 (emphasis in original); *Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d at 311.

[27]    *U.S. ex rel. Graves v. ITT Educ. Servs., Inc.*, 284 F. Supp. 2d 487, 501 (S.D. Tex. 2003) (citing *Mikes*, 274 F.3d at 700 and *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902-03 (5th Cir. 1997)) (emphasis added); *see also U.S. ex rel. Vigil v. Nelnet, Inc.*, 639 F.3d 791, 799-800 (8th Cir. 2011) (dismissing claim where statute

this Court has noted, "[c]onditions of participation, as well as a provider's certification that it has complied with those conditions, are enforced through administrative mechanisms, and the ultimate sanction for violation of such conditions is removal from the government program."[28] "The FCA is not concerned with regulatory noncompliance."[29]  The law is clear:  ***the FCA is only applicable in cases where the statute is a condition of payment, rather than a condition of participation***.[30]

Requiring an express statutory prerequisite to payment serves to prevent inappropriate broadening of the FCA by eliminating the use of the FCA "as a 'blunt instrument' to enforce compliance with all manner of regulations, even if such regulations are unrelated to the government's payment decisions."[31]  In other words, care must be exercised to distinguish between ordinary tort and common law claims on the one hand, and claims under the FCA (which must involve a request for payment from the federal government), on the other. Accordingly, where a statute or regulation sets forth **conditions for eligibility to participate** in a government program, as opposed to **conditions for payment** of funds pursuant to that program, the statute or regulation simply cannot serve as the basis for a False Claims Act cause of action.[32]

---

only provided "conditions of FFELP participation" and thus was not actionable under the FCA).

[28] *Dialysis Clinic, Inc.*, 2011 U.S. Dist. LEXIS 4862, at *45 (quoting *Salina Reg'l Health Ctr.*, 543 F.3d at 1220).

[29] *Nelnet, Inc.*, 639 F.3d at 795.

[30] *Dialysis Clinic, Inc.*, 2011 U.S. Dist. LEXIS 4862, at *60.

[31] *Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d at 311; *see also Mikes*, 274 F.3d 699 (noting appropriate scope of FCA does not include all claims where a payment is made and requiring narrow interpretation of implied false certification theory so as to avoid broadening the FCA beyond its intended scope).

[32] *Mikes*, 274 F.3d at 701; *Dialysis Clinic, Inc.*, 2011 U.S. Dist. LEXIS 4862, at *56-60; *U.S. ex rel. Bowan v. Educ. Am., Inc.*, 116 Fed. Appx. 531, 531-32 (5th Cir. 2004)

For this very reason, courts have stated the requisite elements of a false certification cause of action to include:  "(1) defendant makes a knowingly false certification of compliance with a statute or regulation; and (2) the certification is a prerequisite to payment."[33]  The Second Circuit, in *Mikes v. Straus*, is clear on this controlling principle.

Even accepting Klein's threadbare factual allegations that merely track the language of various federal statutes and regulations, Klein cannot satisfy the second element of the test for a false certification FCA claim.[34]  The regulations and statutes relied on by Klein are insufficient to support an implied false certification claim under the FCA.  Each statute or regulation on which he relies sets forth conditions of participation in a federal program, rather than conditions of payment of federal funds.

The complaint rests on the existence of the PPA required by 20 U.S.C. § 1094.  Section 1094 requires that institutions of higher learning enter into a PPA with the Secretary Education.  As the statute makes clear, the PPA must "condition the initial and continuing eligibility of an institution *to participate in a program* upon compliance with" specified requirements.[35]  Indeed, Klein acknowledges that execution of the PPA is a "prerequisite to the

---

[33]   (holding that conditions imposed by Higher Education Act and Program Participation Agreements required by the HEA were insufficient to support an FCA claim).

[33]   *U.S. ex rel. Gay v. Lincoln Tech. Inst., Inc.*, 2003 U.S. Dist. EXIS 25968, at *9-10 (N.D. Tex. Sep. 3, 2003), *aff'd*, 111 Fed. Appx. 286 (2004).

[34]   Nor, as discussed in Point II, *infra*, has Klein alleged any factual detail under Rule 9(b) to satisfy the first element that a knowingly false certification of compliance was made to the federal government.  Regardless, even if such allegations had been made, Klein's implied false certification theory is unsupportable and dismissal under Rule 12(b)(6) should be ordered.

[35]   20 U.S.C. § 1094 (2012) (emphasis added).

institution's initial or continued ***participation*** in" the Title IV Programs.[36]  The Code of Federal

Regulations, Title 34, Section 668.14, in turn, sets forth provisions to which institutions agree

when entering into a PPA.[37]  Neither 20 U.S.C. § 1094 nor 34 C.F.R. § 668.14 "expressly states

the [institution] must comply in order to be paid" as the Second Circuit has held is an absolute

requirement to support an FCA claim.[38]  Similarly, none of the remaining statutes or regulations

relied on by Klein expressly requires that Empire Education make any certification to the Federal

Government as a condition for payment of federal funds.[39]  This rule ends the analysis and

requires dismissal of the complaint.

       The complaint here plainly is an improper attempt to use the FCA as a "blunt

instrument" to enforce regulations and statutes unrelated to the payment of federal funds.[40]

Accordingly, the Second Circuit's cautionary words should be heeded, and Klein's entire

complaint, which fails to identify a single statute or regulation that requires compliance by

Empire Education ***as an express condition to payment of federal funds***, should be dismissed.[41]

### C.     Klein's Fourth Cause of Action Must be Dismissed Because Adverse Employment Actions are Not Prohibited by the Incentive Compensation Ban in the Higher Education Act

       Klein's Fourth Cause of Action should be dismissed for an additional reason.

Klein bases his fourth cause of action on an alleged violation of the incentive compensation ban

---

[36]     Docket No. 1 (Complaint), ¶ 23 (emphasis added).

[37]     34 C.F.R. § 668.14 (2012).

[38]     *Mikes*, 274 F.3d at 700.

[39]     *See* 20 U.S.C. § 1092(h) (2012); 34 C.F.R § 668.72 (2012); 34 C.F.R. § 668.74 (2012); 20 U.S.C. § 1091 (2012); 34 C.F.R. § 668.83 (2012).

[40]     *Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d at 311; *see also Mikes*, 274 F.3d at 699.

[41]     *Mikes*, 274 F.3d at 699.

due to adverse employment actions purportedly taken by Empire Education.  That claim is insufficient to support a violation of the Higher Education Act.  As the Court of Appeals recognized in *U.S. v. Corinthian Colleges*,[42] "[e]ven as broadly construed, the [Higher Education Act] does not prohibit any and all employment-related decisions on the basis of recruitment numbers; it prohibits only a particular type of incentive compensation.  Thus, ***adverse employment actions, including termination, on the basis of recruitment numbers remain permissible under the statute's terms.***"[43]  Klein's Fourth Cause of Action hinges on a purported violation of the Higher Education Act and the alleged corresponding false certification of compliance with that statute.  Absent a violation of the statute, the certification is not false.  Accordingly, Klein's complaint, to the extent premised on an adverse employment action, cannot survive dismissal under Rule 12(b)(6).

Even assuming adverse employment actions could serve as the basis for a violation of the Higher Education Act, Klein's Fourth Cause of Action still fails.  The Circuit Court in *Corinthian Colleges* also affirmed dismissal of the case to the extent premised on increased compensation to recruiters where the allegations did not allege sufficient facts to show that increased compensation decisions were made *solely* on the basis of the number of students recruited.  The HEA contains a safe harbor allowing for the number of students recruited to be a factor considered in compensation decisions.[44]  In other words, an institution is only in violation if incentives are offered solely as a result of recruiting success.

---

[42]     *U.S. ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011).

[43]     *Id.* at 992-93 (emphasis added).

[44]     *Id.* at 994-95.

Klein has not identified a single employee or instructor who received an incentive based on recruitment or whose compensation was either increased or decreased based solely on recruiting activities.[45]  Klein simply tracks the language of the statute, making the conclusory allegation that "Empire compensated and otherwise provided incentives based directly or indirectly on the faculty member's success in securing enrollments through student recruiting."[46] Similarly, Klein does not allege any facts indicating that the compensation decisions were made based on enrollment statistics rather than based on merit.  Conclusory allegations of the elements of a claim and legal conclusions without supporting factual allegations are not entitled to any weight and are insufficient to state a cause of action under Rule 12(b)(6).[47]  Klein's fourth cause of action is subject to dismissal for this additional reason.

**D.    Klein's Claims under the New York False Claims Act and the Massachusetts False Claims Act Should be Dismissed**

**1.    Dismissal of Klein's Federal False Claims Act Claims Requires Dismissal of His State Law Claims**

As this Court has held, "[t]he N.Y. False Claims Act is 'closely modeled on the federal FCA.'  Accordingly, plaintiff's claims under the state statute are subject to dismissal for the same reasons as plaintiff's federal FCA claims."[48]  The Southern District has similarly held

---

[45]    As addressed in Point II, *infra*, the lack of particularity in Klein's complaint fails to comply with Rule 9(b).  In addition, such threadbare allegations are insufficient to state a claim under Rule 12(b)(6).

[46]    Docket No.1 (Complaint), ¶ 106.

[47]    *Iqbal*, 556 U.S. at 663, 129 S.Ct. at 1940; *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65.

[48]    *Dialysis Clinic, Inc.*, 2011 U.S. Dist. LEXIS 4862, at *63 (quoting *U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*, 2010 U.S. Dist. LEXIS 94858, at *8 (S.D.N.Y. Sep. 13, 2010)).

that, where a Federal False Claims Act claim is subject to dismissal, companion claims brought under the New York False Claims Act should also be dismissed.[49]

Massachusetts courts likewise look to federal law to interpret the Massachusetts False Claims Act and, thus, dismiss claims under the Massachusetts False Claims Act where claims under the Federal False Claims Act fail.[50]  Since Klein's complaint fails to state any cause of action under the FCA, his identical state law claims should also be dismissed.

### 2. Klein Does Not Identify Any Claims for Payment to New York or Massachusetts

Klein's sixth and seventh claims are also utterly lacking in factual allegations and do not allege any of the elements necessary to sustain a cause of action under either the Massachusetts False Claims Act or the New York False Claims Act.  Klein does not identify even a single claim for payment made to either Massachusetts or New York.[51]  Instead, Klein alleges only the elements of an FCA claim under New York and Massachusetts law by tracking the language of the respective statutes without providing any supporting facts.  Such threadbare recitals are not entitled to any weight under Rule 12(b)(6).  Klein does not allege any funding given to students by either state government but, rather, only alleges that students of Empire Education received *federal* funds based on Empire Education's purported false certification of compliance with various federal statutes and regulations.[52]  Klein's sixth and seventh causes of

---

[49]    *Forkell v. Lott Assisted Living Corp.*, 2012 U.S. Dist. LEXIS 72898, at *35 (S.D.N.Y. May 21, 2012).

[50]    *U.S. ex rel. Ciaschini v. Ahold USA Inc.*, 282 F.R.D. 27, 37 (D. Mass. 2012); *see also Massachusetts v. Schering-Plough Corp.*, 779 F. Supp. 2d 224, 229 (D. Mass. 2011) ("Massachusetts courts look for guidance in interpreting the MFCA to cases and treatises interpreting the FCA.").

[51]    *See generally* Docket No. 1 (Complaint), ¶¶ 130-40.

[52]    Docket No. 1 (Complaint), ¶¶ 130-33, 136-39.

action alleging violations of the Massachusetts and New York False Claims Acts are utterly

lacking in factual allegations and should similarly be dismissed.

### POINT II.   KLEIN'S COMPLAINT FAILS TO PLEAD FRAUD WITH PARTICULARITY AS REQUIRED BY FEDERAL RULE OF CIVIL PROCEDURE 9(B) AND SHOULD BE DISMISSED

Even if the complaint was free from these doctrinal failures, it fails for its lack of

sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure.

### A.   Rule 9(b) Standard As Applied to False Claims Act Claims

The Second Circuit has made clear that Rule 9(b) of the Federal Rules of Civil

Procedure applies to claims brought under the FCA.[53]  "[I]t also applies to *qui tam* actions under

state statutes similar to the FCA."[54]  Rule 9(b) provides, in relevant part, that "[i]n alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or

mistake."[55]  Accordingly, a party alleging fraud must:  "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent."[56]

---

[53]   *Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1476-77 (2d Cir. 1995); *see also U.S. ex rel. Chapman v. Office of Children & Family Servs. of the State of New York*, 2010 U.S. Dist. LEXIS 14938, * 10 (N.D.N.Y. Feb. 16, 2010), *aff'd*, 423 Fed. Appx. 104 (2d Cir. 2011) ("False Claims Act claims must be stated with particularity in accordance with Rule 9(b)."); *U.S. ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*, 937 F. Supp. 1039, 1049 (S.D.N.Y. 1996) (applying *Gold v. Morrison-Knudsen Co.* and holding FCA *qui tam* plaintiff to heightened pleading standard under Rule 9(b)).

[54]   *U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 U.S. Dist. LEXIS 43438, at *10 (E.D.N.Y. May 22, 2009) (citing *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 731 n.8 (1st Cir. 2007)).

[55]   Fed. R. Civ. P. 9(b).

[56]   *Chapman*, 2010 U.S. Dist. LEXIS 14938, *10-11; *U.S. ex rel. Wood v. Applied Research Assocs., Inc.*, 328 Fed. Appx. 744, 747 (2d Cir. 2009) (*quoting Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

To sustain an FCA claim, the relator must plead that defendants "(1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury."[57]  Applying Rule 9(b) to the elements of an FCA claim, "the pleading must allege 'facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them.'"[58]  And the plaintiff is also required to "allege facts that give rise to a strong inference of fraudulent intent…."[59]

Courts applying Rule 9(b) to FCA complaints routinely dismiss complaints where a party fails to meet the heightened pleading standard.[60]  For example, FCA complaints are dismissed where they fail to name specific employees accused of making fraudulent statements,[61] recite the elements of an FCA claim in conclusory form,[62] or fail to identify specific claims for payment made to the United States government.[63]

---

[57]   *U.S. ex rel. Branigan v. Bassett Healthcare Network*, 234 F.R.D. 41, 43 (N.D.N.Y. 2005) (quoting *Mikes*, 274 F.3d at 695-96).

[58]   *Chapman*, 2010 U.S. Dist. LEXIS 14938, at *10-11 (quoting *U.S. ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006)).

[59]   *Chapman*, 2010 U.S. Dist. LEXIS 14938, at *11 (quoting *Shields*, 25 F.3d at 1128).

[60]   *See, e.g.*, *DeCarlo*, 937 F. Supp. at 1050 (dismissing FCA complaint where complaint failed to "refer to specific employees who may have been involved in submitting false claims" and lacked specificity in detailing the alleged fraud); *Chapman*, 2010 U.S. Dist. LEXIS 14938.

[61]   *See, e.g.*, *DeCarlo*, 937 F. Supp. at 1050.

[62]   *Wood*, 328 Fed. Appx. at 747 (dismissing complaint which "conclusorily recites the elements of a cause of action under the FCA, and resorts to further collective generalizations about the [defendants]").

[63]   *Dialysis Clinic, Inc.*, 2011 U.S. Dist. LEXIS 4862, at *35 (holding that claim was subject to dismissal under Rule 9(b) where plaintiff failed to identify specific claims for payment to the government).

In *U.S. ex rel. Blundell v. Dialysis Clinic, Inc.*, a case based on a false certification theory of liability, this Court dismissed an FCA case where the plaintiff argued that "any bill submitted to the government [was]…a fraudulent claim" as a result of the false certification.  The Court held that making such a generalized allegation of false claims for payment "is exactly the type of vague and generalized allegation that is impermissible under Rule 9(b)."[64]  Klein makes the same conclusory allegations here.  In 140 single-spaced paragraphs, Klein nevertheless manages to plead very little – far too little in fact to satisfy Rule 9(b).

**B.    Klein's Complaint Fails to Allege Any of the Requisite Factual Predicate for a False Claims Act Claim**

**1.    Klein Does Not Allege Any Facts Supporting Violations of the Statutes or Regulations Underlying His Claims**

The allegations of this complaint fall far short of the Rule 9(b) pleading standard.[65]  After reciting a string of statutes and regulations that Klein argues all institutions certify compliance with when they enter into Program Participation Agreements, Klein alleges, in vague and conclusory terms, that "[t]he Defendant Empire"[66] makes various misrepresentations to students regarding transferability of credits,[67] the "availability, frequency

---

[64]    *Id.*

[65]    In fact, Klein's threadbare allegations are not even sufficient to sustain a motion to dismiss under Rule 12(b)(6).  As the Supreme Court made clear in *Iqbal*, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient to state a claim under Rule 12(b)(6).  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1940 (2009).  Klein has not alleged any actual facts to support his claims and his complaint should also be dismissed, for the reasons stated herein, under Rule 12(b)(6).

[66]    Klein alternates introductory phrases as to the party purportedly making fraudulent misrepresentations, sometimes indicating that those misrepresentations were made by "Defendant Empire, *through* its managerial employees" and sometimes indicating they were made "by Defendant Empire *and* its managerial employees."

[67]    Complaint, ¶ 34.

and appropriateness of its courses and programs to satisfy the employment objectives that it states its programs are designed to meet,"[68] the "number, availability, and qualifications, including the training and experience, of its faculty and other personnel,"[69] Empire's "plans for improvements in its academic programs,"[70] the availability and quality of its equipment, such as computers,[71] the percentage of students employed in their "chosen fields" after they graduate,[72] and the "advantage" that a student getting an education has in the marketplace.[73]

Klein's complaint is plainly insufficient to show that any false or fraudulent statements were made by Empire Education. Klein does not identify the individual(s) who made any of those purportedly false representations, when the representations were made, the student(s) to whom the representations were made, how the representations were communicated to the unidentified listener(s) or receiver(s) of the representation, or any factual details to even show that the representations were false or fraudulent. Despite the fact that Klein relies almost entirely on subjective "misrepresentations" of the "quality" of the faculty and equipment, the "advantage" that a student getting a degree from Empire Education has in the marketplace, and the "appropriateness" of courses and programs, Klein does not even attempt to say how those subjective representations were false. Yet, those unidentified alleged misrepresentations are the bedrock of Klein's argument that Empire Education falsely and fraudulently certified compliance with federal statutes and regulations by entering into a PPA with the Secretary of Education in

---

[68]     Complaint, ¶ 47.

[69]     Complaint, ¶ 49.

[70]     Complaint, ¶ 52.

[71]     Complaint, ¶ 55.

[72]     Complaint, ¶¶ 69-70.

[73]     Complaint, ¶¶ 78-79.

order to **_participate_** in the Title IV Programs.  Klein has failed to give any details whatsoever of the alleged false or fraudulent statements.

Under Rule 9(b), each of the alleged misrepresentations purportedly made must be properly supported by factual allegations.  For example, in _U.S. ex rel. Diaz v. Kaplan Univ._,[74] the court made clear that to sustain an allegation of grade inflation, a party must allege facts sufficient to show "any specific student or students who were not attending class, not doing their work, or otherwise not adequately performing but whom Defendants certified were performing in order to receive student loans."[75]  The relator must provide specific examples of the misconduct, including the students whose grades were changed and the teachers who were pressured to change grading practices.[76]  And, importantly, the relator must allege sufficient facts to show that the institution engaged in grade inflation with the intent to defraud the federal government.[77]

Here, Klein's allegations are insufficient to state a claim of purported grade inflation.  Klein alleges in broad and conclusory form that "Empire's instructors do, at the request of Empire's managerial employees Does 1-50, inflate the grades of students whose GPA would otherwise render them ineligible for continued federal and state funds, and further would discourage the students from continuing with their courses at Defendant Empire's institution" and that "[t]his scheme to manipulate student grades constitutes a fraud, affecting a significant

---

[74]     2011 U.S. Dist. LEXIS 91587, at *17-19 (S.D. Fla. Aug. 17, 2011).

[75]     _Id._

[76]     _U.S. ex rel. Pilecki-Simko v. Chubb Inst._, 2010 U.S. Dist. LEXIS 27187, at *30-31 (D.N.J. Mar. 22, 2010).

[77]     _Id._ at *31.

amount of federal and state funding recipients at Empire."[78]  Klein's complaint contains no actual facts, but rather makes only conclusory statements that Empire Education inflated the grades of students.[79]  Klein does not identify even one single student who did not deserve or earn the grade he or she received, nor does he identify any member(s) of management who purportedly pressured instructor(s) to inflate grades, any instructor(s) who actually did inflate grades, the date or semester in which grades were inflated, or any other factual details.  Klein's allegations are inherently insufficient under Rule 9(b).

The court in *Diaz* also dismissed allegations of "enrolling unqualified students, the extreme pressure of admissions representatives to perform, the misuse of accreditation claims, and misadvising students" where the allegations were insufficient to show that any of those allegations, if true, violated a statute or regulation.[80]  Similarly here, Klein makes only generalized and conclusory allegations that Empire Education misadvised students as to the quality of instructors, availability of courses, quality of equipment, and the "advantage" they would get in the workplace by securing postsecondary education.  Klein does not identify the student(s) to whom the statement(s) was (were) made, when the statement(s) was (were) made to the unidentified listener(s), the method used to communicate the statement(s) to the unidentified listener(s), or even any facts showing that the statement(s) was (were) false at the time they were made or made with the intent to defraud the government.  Nor do any of the allegations contain any facts showing that the purported misrepresentation(s), if true, actually violated a statute or regulation.

---

[78]     Docket No. 1 (Complaint), ¶¶ 92-93.

[79]     Docket No. 1 (Complaint), ¶¶ 91-92.

[80]     *Diaz*, 2011 U.S. Dist. LEXIS 91587, at *26-27.

Klein also generally alleges misrepresentations by Empire Education with respect to post-graduation employment placement data.  Courts analyzing similar allegations have made clear the requisite facts to properly plead such a misrepresentation.  Where a party alleges misrepresentation of employment placement data, the plaintiff must plead "which statements regarding the placement rates were false (or conversely what the actual placement rates were), to what degree they were inflated or diminished, and upon whose instructions they were falsified."[81]

As discussed in more detail below, the relator also must plead facts showing that the institution "had notice that its submissions contained erroneous data [and] that they intended to use erroneous data for the purpose of defrauding the government."[82]  Klein's allegations fall far short of this standard.  Klein alleges only generally that "the Defendant Empire deliberately manipulates its statistics for graduates having obtained employment in their 'chosen fields' after graduation" and that "[t]hose manipulated numbers become part of fraudulent reports knowingly and willfully disseminated to prospective students...."[83]  Klein does not identify the who, what, where, when, why or how the statistics are purportedly manipulated and does not provide this Court with even one example of any such manipulation.  And Klein does not even allege that the post-employment statistics are manipulated for the purpose of defrauding the government, but

---

[81]      *Pilecki-Simko*, 2010 U.S. Dist. LEXIS 27187, at *28-29.

[82]      *Id.* at *30.

[83]      Docket No. 1 (Complaint), ¶¶ 70-71.

rather that those false statistics are then "disseminated to prospective students."  The allegations in the complaint are simply insufficient to satisfy Rule 9(b).[84]

> **2.      Klein Does Not Identify Any Actual False Certifications Purportedly Made to the Federal Government or Any Facts Supporting A Fraudulent Intent by Empire Education in Making Those Certifications**

Klein's complaint contains another fundamental failure.  He does not purport to tie the allegedly false representations to students to any specific statements made to the government.  Klein does not allege the date(s) certifications were purportedly made to the government, the individual(s) who made such certifications, or the substance of the certifications.  Nor does he allege any facts sufficient to find a fraudulent intent when Empire Education made its purportedly false certifications.  And he utterly fails to allege any facts showing that, at the time the Program Participation Agreement was submitted, Empire knew it was incorrect and did not intend to comply with the certifications.  Klein has not offered any facts from which it can be inferred that Empire Education intentionally misrepresented the quality and availability of its faculty and staff at the time that it signed the PPA.  Klein has not offered any facts supporting an inference that Empire Education intentionally misrepresented the quality of its equipment or its plan for improving the school at the time it signed the PPA.  Klein has not offered any facts supporting an inference that Empire Education intentionally

---

[84]      In fact, the allegations here are frequently found by courts in other contexts to be non-actionable "puffery."  *Love v. Career Educ. Corp.*, 2012 U.S. Dist. LEXIS 67762, at *10-11 (E.D. Mo. May 15, 2012) (dismissing fraud claim based on purported misrepresentations relating to adequacy of education to prepare students for employment, adequacy of instructors, adequacy of equipment, and adequacy of facilities as non-actionable statements of opinion); *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20-21 (2d Cir. 2000) (dismissing negligent misrepresentation claim where statements were non-actionable promises of future output and not misrepresentations of present facts); *B&M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 482 (S.D.N.Y. 2010) (holding that statements of opinion and "commercial puffery" are not actionable in New York).

misrepresented the employment statistics of its graduating students or the transferability of credits.  Simply put, Klein's complaint plainly lacks the specificity mandated by Rule 9(b).

Even where a party genuinely believes that incorrect information has been provided to the government and that party has evidence that the information was in fact incorrect, a court cannot infer that the claims for payment submitted as a result were made with the requisite fraudulent intent.[85]  Instead, there must be allegations from which the court can find that the intent to defraud the government existed at the time the statements were made.[86]  Klein has not provided this Court with any facts from which such an intent can be found.  Absent any allegations supporting a fraudulent intent to deceive the government at the time of the purportedly false certifications made in the Program Participation Agreement, no claim has been pleaded under Rule 9(b).

### 3. Klein Does Not Identify Any Claims for Payment of Federal Funds

Even setting aside Klein's failure to properly plead a false or fraudulent statement and Klein's additional failure to show that those false or fraudulent statements were in contravention of a certification made to the Federal Government, Klein's complaint *still* fails. The complaint here also fails to allege any specific claims for payment of federal funds.  In *U.S. ex rel. Graves*, the court detailed the workings of federally guaranteed loan programs.  A student first submits a request for a loan to a private lender.  The lender issues a check to the student and school jointly to pay for the student's tuition.  The loans are guaranteed by state agencies or other nonprofit organizations and reinsured by the DOE.  If, and only if, the student fails to repay the

---

[85]     *Wood*, 328 Fed. Appx. at 750.

[86]     *Id.*

22

loan, the guaranteeing agency reimburses the lender.  If the guaranteeing agency is unable to collect from the defaulting student, it can then seek reimbursement from the Department of Education.[87]

Accordingly, "[i]n the case of government-insured loans, a 'claim' arises not when an application for the loan is submitted, but rather when a default occurs and reimbursement is sought from the government."[88]  In other words, where claims under the FCA are based on allegations that false statements were made in connection with governmentally secured loans under the Perkins or FFELP programs, as Klein has alleged in this case, those claims should be dismissed absent specific allegations of actual defaults by those obligated to repay the loans.[89]  Otherwise, no claim is ever made to the federal government for payment on the loan.  As a result, courts have often held that a request for government guaranteed loans is only an "inchoate" claim that does not ripen into a claim encompassed by the FCA until the government is requested to pay on its guarantee.[90]

Moreover, as this Court made clear in *U.S. ex rel. Blundell v. Dialysis Clinic, Inc.*, generalized allegations of false claims for payment based on a prior certification are "exactly the type of vague and generalized allegation[s] that [are] impermissible under Rule 9(b)."[91]  Yet Klein does not allege any particulars regarding claims for payment to the government.  He does

---

[87]   *Graves*, 284 F. Supp. 2d at 495.

[88]   John T. Boese, *Civil False Claims and Qui Tam Actions* § 2.02[B][2] (2d Ed. 2005) (citing *United States v. Rivera*, 55 F.3d 703, 710 (1st Cir. 1995); *United States v. Van Oosterhout*, 898 F. Supp. 25, 29 (D.D.C. 1995) and *Graves*, 284 F. Supp. 2d at 495-96).

[89]   *Graves*, 284 F. Supp. 2d at 495-96.

[90]   *See, e.g.*, *U.S. ex rel. Fago v. M&T Mortg. Corp.*, 518 F. Supp. 2d 108, 117 (D.D.C. 2007).

[91]   *Dialysis Clinic, Inc.*, 2011 U.S. Dist. LEXIS 4862, at *35.

not identify the date on which claims for payment were made, the amount of the claim for payment, the individual(s) making or submitting the claims for payment, or any other details of the claims.  Nor does Klein identify even one single loan for which government funds were sought pursuant to the governmental guarantee of the loan.  Absent any allegations of an actual claim for payment from the federal government, the supposed claims have not yet ripened into a valid FCA claim and should be dismissed.

**C.**     **Klein's Claims Against "Does 1-50" Must Be Rejected As Well**

A False Claims Act complaint must set out the specific conduct of each individual defendant.[92]  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."[93]  Alleging suit against "John Does" or "Jane Does" simply does not comply with Rule 9(b).[94]

Klein's complaint fails to comply with Rule 9(b)'s requirements to name the defendants alleged to have engaged in fraudulent conduct.  Klein purports to file suit against "Empire Education Corporation" and "Does 1-50."[95]  Throughout the complaint, Klein references "Defendant Empire and its managerial employees" or "Defendant Empire, through its

---

[92]     *Corinthian Colleges*, 655 F.3d at 997-98.

[93]     *Id.* at 994-95.

[94]     *See U.S. ex rel. Lewis v. Walker et al.*, 2007 U.S. Dist. LEXIS 68208, at *26-27 n. 10 (M.D. Ga. Sep. 14, 2007) (holding that False Claims Act complaint, as alleged against "John Does," did not satisfy Rule 9(b)); *see also U.S. ex rel. Heater v. Holy Cross Hosp., Inc.*, 2007 U.S. Dist. LEXIS 63706, at *22 (S.D. Fla. Aug. 29, 2007) (dismissing claims against "Doe" defendants where plaintiff failed to identify specific individuals).

[95]     Docket No. 1 (Complaint), at 1.

managerial employees," without ever identifying even a single managerial employee purportedly involved in the fraudulent conduct.[96] Indeed, the only specific name mentioned anywhere in the Complaint is that of plaintiff Klein.[97] Yet Klein purports to name those general "managerial employees" as "Does 1-50" claiming they have engaged in fraudulent conduct. Klein's allegations are plainly and fundamentally insufficient under Rule 9(b) and should be dismissed.

## CONCLUSION

False Claims Act cases that merely allege the violation of statutes or regulations that are not a condition to payment of government funds are deficient. As the Second Circuit has cautioned, the FCA is to be narrowly applied and not stretched beyond its intended purpose. Simply put, Klein's conclusory and factually unsupported complaint fails to state a cause of action. His complaint also fails to plead the requisite facts with the particularity required by Rule 9(b). This baseless and legally deficient complaint should, therefore, be dismissed.

Dated:    December 17, 2012

**HODGSON RUSS LLP**
*Attorneys for Defendants*

By:      s/ Michelle L. Merola
            Daniel C. Oliverio, Bar Roll No. 517878
            John L. Sinatra, Jr., Bar Roll No. 517861
            Michelle L. Merola, Bar Roll No. 514446
            Kevin J. Espinosa, Bar Roll No. 517877
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

---

[96]    Docket No. 1 (Complaint), ¶¶ 34, 36, 37, 39, 44, 47, 48, 52, 55, 59, 66, 68, 75, 76, 80, 84, 92, 99, 109, 119, 134, 140.

[97]    *See generally* Docket No. 1 (Complaint).

25