UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA, THE
COMMONWEALTH OF MASSACHUSETTS,
and THE STATE OF NEW YORK,
ex rel. LAWRENCE KLEIN,

                Plaintiffs,

       -v-                        1:11-CV-0035

EMPIRE EDUCATION CORPORATION and
DOES 1-50,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

TULLY RINCKEY PLLC         DOUGLAS J. ROSE, ESQ.
Attorneys for Plaintiff-Relator
441 New Karner Road
Albany, NY 12205

HODGSON RUSS LLP          JOHN L. SINATRA, JR., ESQ.
Attorneys for Defendants       KEVIN J. ESPINOSA, ESQ.
The Guaranty Building        MICHELLE L. MEROLA, ESQ.
140 Pearl Street, Suite 100
Buffalo, NY 14202

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      Plaintiff-relator Lawrence Klein ("Klein") filed this qui tam action against Empire

Education Corporation ("Empire" or "defendant") and Does 1–50 pursuant to the federal

False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33; the Massachusetts False Claims Act,

Massachusetts General Laws, Chapter 12, Section 5A et seq.; and the New York False Claims Act, New York State Finance Law, Section 187 et seq. The United States, Massachusetts, and New York have elected not to intervene.

Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure ("Rule ___") 12(b)(6) and 9(b). Plaintiff opposed, and defendant replied. The United States submitted a Statement of Interest pursuant to 28 U.S.C. § 517. The motion was taken on its submissions without oral argument.

## II. <u>FACTUAL BACKGROUND</u>

Klein worked for Empire from March 11, 2008 until his discharge on December 8, 2009, in the position of Director of Career Services at defendant's Pittsfield, Massachusetts campus. Klein purports to recover damages and civil penalties on behalf of the United States, Massachusetts, and New York, arising out of false claims approved and presented by Empire to obtain amounts from the United States Department of Education ("DOE") pursuant to Title IV of the Higher Education Act ("HEA").

When individuals apply for student loans from the government, educational institutions such as Empire are eligible for Title IV funds on behalf of their students through a variety of government programs, such as the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Grant Program, the Federal Perkins Loan Program, and the Federal Family Education Loan Program (collectively, "Title IV Programs"). These institutions also request funds for eligible students through DOE programs provided by Massachusetts and New York.

The federal government, Massachusetts, and New York do not pay these funds directly to the student applicants, but rather to the educational institution or a third party

intermediary lender. The government or intermediary lender wires these funds directly into the institution's account, and the institution credits the funds against the student's tuition and other fees the student owes the institution. The federal government, state agencies, and non-profit organizations ("Guaranty Agents") guarantee the federal and state funds that the student is borrowing and the educational institution receives. The Guaranty Agents are accordingly subsidized and re-insured by the DOE.

When students graduate or withdraw from an educational institution, they are responsible for paying back the federal government, Massachusetts, and/or New York, whether they complete their schooling or drop out. If a student defaults on the payment of these funds, a Guaranty Agent reimburses the applicable federal or state government lender. If the Guaranty Agent cannot collect from the student, then the DOE reimburses the Guaranty Agent.

As a condition of participation in Title IV programs, an educational institution is required to enter into a written Program Participation Agreement ("PPA") with the United States Secretary of Education. In signing the PPA, the institution agrees that it will comply with the various federal statutes and regulations that serve as conditions of participation for the Title IV programs. Klein alleges that Empire engaged in numerous practices which violated these conditions of participation. Thus, he contends that, by executing the PPA, defendant falsely certified to the federal government, Massachusetts, and New York that it was in compliance with "all federal regulations, federal laws, state laws, and that [Empire] meet[s] the proper requirements of the accrediting agency in order to receive federal financial student loans." Compl. ¶ 18.

Klein alleges:  Empire made misrepresentations regarding the transfer of credit policies (First Cause of Action); Empire made misrepresentations regarding the nature of its educational programs, employment and graduation statistics, and other information (Second Cause of Action); Empire fraudulently certified grade point averages to procure federal and state funding to pay the tuition of students who would otherwise be ineligible to receive funding (Third Cause of Action); Empire unlawfully tied student recruitment to adverse employment actions (Fourth Cause of Action); Empire unlawfully discharged Klein in retaliation for engaging in protected activities (Fifth Cause of Action); Empire violated the Massachusetts False Claims Act (Sixth Cause of Action); and Empire violated the New York False Claims Act (Seventh Cause of Action).

## III.  LEGAL STANDARDS

### A.  Federal and State False Claims Acts

The FCA is intended to recover damages from those who defraud the federal government.  It imposes liability on those who knowingly present, or cause to be presented, false or fraudulent claims for payment, or knowingly make, use, or cause to be used, false records or statements to get false claims paid or approved.  31 U.S.C. § 3729(a)(1)(A)&(B). Private persons, known as relators, may file qui tam actions—actions on behalf of the government—for violations of § 3729.  Id. § 3730(c)(3); see also United States ex rel. Dick v. Long Island Lighting Co., 912 F.2d 13, 16 (2d Cir. 1990).

The Massachusetts False Claims Act "is modeled on the federal FCA" and "courts use the federal FCA for guidance in interpreting the M[assachusetts ]FCA."  United States ex rel. Ciaschini v. Ahold USA Inc., 282 F.R.D. 27, 37 (D. Mass. 2012) (internal quotation marks omitted).  Similarly, the New York False Claims Act is "nearly identical to the [federal] FCA in

all material respects." United States ex rel. Assocs. Against Outlier Fraud. v. Huron Consulting Grp., Inc., ___ F. Supp. 2d ___, 2013 WL 856370, at *10 (S.D.N.Y. Mar. 5, 2013). Therefore, Klein's state law claims are subject to the same standard of review under Rule 9(b).

## B. Rule 12(b)(6)

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). All reasonable inferences must be drawn in favor of the complainant. See Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949. Instead, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679, 129 S. Ct. at 1950.

## C. Rule 9(b)

It is well-settled law that "claims brought under the FCA fall within the express scope of Rule 9(b)." Gold v. Morrison-Knudsen Co., 68 F.3d 1475, 1477 (2d Cir. 1995). A plaintiff alleging fraud under Rule 9(b) "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The allegations of fraud must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

fraudulent." <u>Dobina v. Weatherford Int'l Ltd.</u>, 909 F. Supp. 2d 228, 240 (S.D.N.Y. 2012) (internal quotation marks omitted).

In the context of the FCA, the plaintiff-relator must allege "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them." <u>United States ex rel. Chapman v. Office of Children & Family Servs. of the State of N.Y.</u>, No. 1:04-CV-1505, 2010 WL 610730, at *4 (N.D.N.Y. Feb. 16, 2010) (internal quotation marks omitted), <u>aff'd</u>, 423 F. App'x 104 (2d Cir. 2011) (summary order). Klein must not only allege with particularity the "underlying schemes and other wrongful activities" but also the resulting "submission of fraudulent claims." <u>United States ex rel. Mooney v. Americare, Inc.</u>, No. 06-CV-1806, 2013 WL 1346022, at *3 (E.D.N.Y. Apr. 3, 2013) (internal quotation marks omitted). Thus, "pleadings invariably are inadequate unless they are linked to allegations, stated with particularity, of the actual false claims submitted to the government that constitute the essential element of an FCA qui tam action." <u>Id.</u> (internal quotation marks omitted).

Although Rule 9(b) provides that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally . . . the relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." <u>Shields v. Citytrust Bancorp, Inc.</u>, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks omitted). Therefore, plaintiff is required "to allege facts that give rise to a strong inference of fraudulent intent." <u>Id.</u>

## IV. <u>DISCUSSION</u>

Empire moves to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6) and for failure to allege fraud with particularity pursuant to Rule 9(b). It argues that:

(1) plaintiff cannot state a claim pursuant to Rule 12(b)(6) under the FCA nor state law by relying on an implied false certification theory with a statute that is a condition to participation in a federal funding program, and not a condition for payment of federal funds; (2) the fourth cause of action alleging adverse employment actions fails to state a claim under Rule 12(b)(6); and (3) the complaint fails to plead fraud with particularity as required by Rule 9(b) because it fails to identify any claims for payments of funds, fails to allege sufficient facts as to the underlying fraudulent scheme, and fails to allege facts as to Does 1–50.  Klein responds that:  (1) he has stated a valid claim under an implied false certification theory; (2) his complaint pleads factual details sufficient to satisfy Rule 9(b); and (3) he should be granted leave to amend the complaint should Empire's motion to dismiss any causes of action be granted.

## A.  Rule 12(b)(6) Motion

### 1.  Implied False Certification Theory—All Causes of Action

Empire contends that Klein has failed to state a claim pursuant to Rule 12(b)(6) because he cannot rely on an implied false certification theory of liability.

There are three theories of liability under the FCA:  (1) a factually false theory, under which a claim for payment is made to the government seeking payment for services that were never actually provided or for which the description of the goods or services provided is incorrect; (2) an express false legal certification theory, where a claim for payment of federal funds falsely certifies compliance with a statute or regulation that must be complied with before payment can be made; and (3) an implied false legal certification theory, where, although the claim for payment does not certify compliance with a statute or regulation on its

face, compliance is a prerequisite to payment under the express statutory or regulatory terms. United States ex rel. Mikes v. Straus, 274 F.3d 687, 696–700 (2d Cir. 2001).

Empire relies on Mikes, which drew a distinction between conditions of participation in a federal program and conditions of payment of federal funds in the Medicare context. Id. at 699–700. The plaintiff in Mikes, a discharged employee physician, alleged that her former employer, a partnership of physicians, failed to conform to the guidelines of 42 U.S.C. § 1320c-5(a), which establishes conditions of participation in the Medicare program. Mikes, 274 F.3d at 693. The Second Circuit concluded that, because § 1320c-5(a) did not expressly condition payment of federal funds on compliance with its terms, a defendant does not implicitly certify compliance with § 1320c-5(a) when submitting a Medicare reimbursement form. Mikes, 274 F.3d at 702.

Empire argues the instant matter involves a straightforward application of Mikes: although the PPA it executed serves as a prerequisite for participation in HEA programs, none of the statutes or regulations upon which Klein relies expressly require that Empire make any certification to the federal government as a condition for payment of federal funds. It contends that Mikes is not limited to the Medicare and medical provider context, but that it instead sets forth the broader rule that conditions of participation in federal programs cannot serve as the basis for liability under the FCA.[1]

_____

[1] For this proposition, Empire relies on United States ex rel. Kirk v. Schindler Elevator Corp., where the Second Circuit applied the Mikes analysis to a claim brought for violations of conditions of payment under the Vietnam Era Veterans Readjustment Assistance Act. 601 F.3d 94, 113 (2d Cir. 2010), rev'd on other grounds, 131 S. Ct. 1885 (2011). Specifically, the Court noted that Mikes "offers a useful illustration" of the distinction between conditions of payment and conditions of participation. Schindler Elevator Corp., 601 F.3d at 115.

Both Klein and the United States contend that Mikes is limited to the Medicare context, which contains a plethora of administrative health regulations.  Plaintiff relies on authority from the Ninth Circuit, which expressly rejected the distinction between conditions of participation and conditions of payment in the higher education context.  United States ex. rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1176 (9th Cir. 2006).  Plaintiff also cites United States ex rel. Feldman v. City of New York, where the Southern District of New York concluded that, "the Second Circuit [in Mikes] restricted its holding to FCA claims brought against a medical provider."  Feldman, 808 F. Supp. 2d 641, 653 (S.D.N.Y. 2011).

The application of Mikes to the facts at hand and Klein's resulting ability to bring suit under the FCA and its state analogues present a close question.  Because the complaint fails to state a claim, as explained below, the application of Mikes need not be decided at this time.

## 2.  Retaliatory Discharge—Fifth Cause of Action[2]

The FCA incorporates broad anti-retaliation protection for whistleblowers.  To state a claim for retaliatory discharge under the FCA, Klein must prove that he was "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by [him] . . .  in furtherance of an action under this section or other efforts to stop 1 or more violations" of the FCA.  31 U.S.C. § 3730(h)(1).  In other words, he must show:  "(1) that he engaged in conduct protected under the statute, (2) that defendants were aware of his conduct, and

---

[2] "Rule 9(b)'s heightened pleading standard does not apply to plaintiff's FCA retaliation claim since no showing of fraud is required."  Mooney, 2013 WL 1346022, at *8.  Thus, Klein's fifth cause of action will be reviewed under Rule 12(b)(6).

(3) that he was terminated in retaliation for his conduct."  United States ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ., 451 F. Supp. 2d 613, 624 (S.D.N.Y. 2006).  For Klein to prove that he engaged in conduct protected under the statute, he need not prevail on his underlying FCA claims, but simply demonstrate that he "had been investigating matters that were calculated, or reasonably could have [led], to a viable FCA action."  United States ex. rel. Sasaki v. N.Y. Univ. Med. Ctr., No. 05 Civ. 6163, 2012 WL 220219, *12 (S.D.N.Y. Jan. 25, 2012).

Klein alleges that he was placed on "probation" and ultimately terminated from Empire because he notified Empire "that it was not being truthful about its falsification and manipulation of student's grades, in violation of the HEA."  Compl. ¶ 122.  Plaintiff further alleges that he received these adverse employment actions "[a]s a consequence of his expression of concerns of . . . Empire's acts and conduct which were in violation of the HEA and PPG."  Id. ¶¶ 124–25.  He concludes that "Empire retaliated against [him] for his engaging in protected activities under the FCA."  Compl. ¶ 127.

Accepting plaintiff's allegations as true and drawing all reasonable inferences in his favor, a reasonable jury could conclude that plaintiff was investigating matters that were calculated or reasonably could lead to an FCA action.  Thus, Klein has stated a claim for retaliatory discharge and his fifth cause of action will remain.

### B.  Rule 9(b) Motion

Empire argues that plaintiff has not set forth facts sufficient to satisfy the heightened pleading standard under Rule 9(b).

At the outset, Does 1–50 must be addressed.  Empire argues that Klein has failed to allege the "specific conduct of each individual defendant" under Rule 9(b).  Def.'s Mem.

Supp. Mot. to Dismiss 24 ("Def.'s Mem.").  It contends that, although plaintiff names "Does 1–50" as defendants, he has not identified "even a single managerial employee purportedly involved in the fraudulent conduct." Id. 25.  Indeed, plaintiff has simply identified Does 1–50 as a group of "managerial employees" without alleging any particular conduct of an individual John Doe or managerial employee. See, e.g., Compl. ¶¶ 34, 36–37, 39.  The complaint "provides no means of linking any of the defendant[s] . . . to the [false claims]." United States ex rel. Branigan v. Bassett Healthcare Network, 234 F.R.D. 41, 45 (N.D.N.Y. 2005) (Mordue, J.).  Therefore, Klein has failed to plead the requisite particularity with regard to Does 1–50 and they will be dismissed.

Next, Empire contends that Klein fails to "allege any particulars regarding claims for payment to the government," including "the date on which claims for payment were made, the amount of the claim for payment, the individual(s) making or submitting the claims for payment, or any other details of the claims." Def.'s Mem. 23–24.  Indeed, in all seven causes of action, plaintiff does not point to any specific claim(s) for payment that defendant submitted to the government.  Thus, Klein "has failed to identify any particular case where a fraudulent bill was presented or any factual basis to conclude that he personally observed or had reason to know that a fraudulent claim was submitted." United States ex rel. Blundell v. Dialysis Clinic, Inc., No. 5:09-CV-00710, 2011 WL 167246, at *10 (N.D.N.Y. Jan. 19, 2011) (Mordue, C.J.).

Klein argues that Rule 9(b)'s requirements should be relaxed because of the "unique circumstances of the case." Pl.'s Opp'n Mot. to Dismiss 12 ("Pl.'s Mem.").  He contends that the alleged fraud here is "particularly complex, involves a large number of occurrences, or took place over an extended period of time," which provides an appropriate context for a

relaxed pleading standard.  <u>Johnson v. Univ. of Rochester Med. Ctr.</u>, 686 F. Supp. 2d 259, 266 (W.D.N.Y. 2010).  He cites his short period of employment at Empire, the relative complexity of the alleged fraud, and "the extended period of time elapsed and numerous amount of claims submitted by [Empire] to the federal government through the many students who have attended the school over a decade in order to receive loans."  Pl.'s Mem. 13.

Courts have occasionally relaxed the pleading standards of Rule 9(b) in limited circumstances "when facts are peculiarly within the opposing party's knowledge."  <u>Boykin v. KeyCorp</u>, 521 F.3d 202, 215 (2d Cir. 2008).  Although a plaintiff-relator's "lack of access to billing documents" may trigger the relaxation of Rule 9(b), he must still "plead . . . the fraudulent scheme in detail."  <u>Mooney</u>, 2013 WL 1346022, at *5.  Thus, "the claim must still allege a factual nexus between the improper conduct and the resulting submission of a false claim to the government."  <u>Johnson</u>, 686 F. Supp. 2d at 266.

Klein served as Empire's Director of Career Services, a relatively high-ranking position where he was likely privy to many "of the ways in which the corporation's internal affairs [were] . . . conducted."  <u>DiVittorio v. Equidyne Extractive Indus., Inc.</u>, 822 F.2d 1242, 1248 (2d Cir. 1987).  Admittedly, he need "not identif[y] every conceivable detail of every claim identified," as, in his position, he may not have had access to information regarding the claims submitted for payment.  <u>Mooney</u>, 2013 WL 1346022, at *7.  Nonetheless, even if the pleading requirements of Rule 9(b) were relaxed here, plaintiff-relator is still is in a position to plead the fraudulent scheme in detail.  As explained below, he has only generally "alleg[ed] a fraudulent scheme . . . and conclud[ed], that as a result of the fraudulent scheme, false

claims must have been submitted." Johnson, 686 F. Supp. 2d at 266 (internal quotation marks omitted).

### 1. Empire's Misrepresentations Regarding the Transfer of Credit Policies—First Cause of Action

Klein alleges that Empire, through its managerial employees, made representations to prospective students that they could transfer "course credits earned at the institution to other institutions, including community colleges." Compl. ¶ 34. Despite this representation, students who enrolled at Empire's Pittsfield, Massachusetts campus "later determine[d] that course credits earned [at the Pittsfield campus] are only transferable to Empire's Latham, New York campus" and must accordingly "re-take the courses at another institution." Id. ¶¶ 37–38.

Nowhere in the complaint does Klein point to any specific course to which this alleged credit transfer policy applies, name any Empire managerial employee who made representations of the credit policies, or name any student who was forced to re-take a course previously completed at Empire "in order to continue [his] pursuit of a higher education" at another institution. Compl. ¶ 38. "These are general allegations which fail to provide specifics as to time and place of alleged fraudulent acts and who committed such acts." Chapman, 2010 WL 610730, at *4. Moreover, plaintiff does not allege that Empire had "motive and opportunity to commit fraud," nor does he proffer "strong circumstantial evidence of conscious misbehavior or recklessness." Woori Bank v. RBS Secs., Inc., 910 F. Supp. 2d 697, 703 (S.D.N.Y. 2012).

Klein has failed to state with the required particularity that Empire misrepresented its credit transfer policies. Accordingly, his first cause of action will be dismissed.

**2. Empire's Misrepresentations Regarding the Nature of its Educational Programs, Employment and Graduation Statistics, and Other Information—Second Cause of Action**

Klein alleges that Empire and its managerial employees, Does 1–50, "have made misrepresentations as to the availability, frequency, and appropriateness of its courses and programs to satisfy the employment objectives that it states its programs are designed to meet," Compl. ¶ 47; the "number, availability, and qualifications, including the training and experience, of its faculty and other personnel," id. ¶ 49; Empire's "plans for improvements in its academic programs," id. ¶ 52; the availability and quality of its equipment, id. ¶ 55; the percentage of students employed in their "chosen fields" after they graduate, id. ¶¶ 69–70; and the "advantage" that their students receive in the marketplace, id. ¶¶ 78–79.

For all of Klein's numerous allegations, he fails to identify:  (1) which Empire employee made representations regarding the nature of its educational programs; (2) when and where such representations were made; (3) how they were fraudulent; and (4) any resulting submission of a false claim for payment.  For example, he alleges that Empire falsely certified that "four out of five Mildred Elley graduates find rewarding positions in their chosen field after graduation," id. ¶ 69, but does not explain what merits a "rewarding position" or a "chosen field" for the purposes of Empire's survey.  Although plaintiff does allege that such a statement was made "as of February 19, 2010," id., he does not allege which Empire employee made this statement, at what campus it was made, how Empire "manipulated numbers" to disseminate "fraudulent reports knowingly and willfully," or what resulting claims for payment were falsely submitted to the government, id. ¶ 71.

Klein further provides conclusory allegations regarding Empire's representations of its curriculum.  He asserts that "Empire represents that the education students will receive at its

- 14 -

institution will provide them with 'an invaluable advantage as [they] enter the 21st century marketplace." Id. ¶ 78. In addition to omitting the speaker, time, and location of this representation, plaintiff also fails to identify which "skills" or purported "advantage" in the workplace Empire's curriculum targets. Instead, he only alleges that Empire "has provided [its students] with little to no 'advantage' in said marketplace." Id. ¶ 79. These vague assertions fall short of the Rule 9(b) standard.

Thus, Klein has failed to state with particularity that Empire misrepresented the nature of its educational programs, employment and graduation statistics, and other information. Accordingly, his second cause of action will be dismissed.

### 3. Empire's Fraudulent Certification of Grade Point Averages—Third Cause of Action

Klein alleges that, in order to "increase its number of students, Empire engages in a scheme to fraudulently procure funding for these students from the United States . . . representing tens of thousands of dollars in government benefits to which the students would otherwise be unentitled/ineligible to receive." Compl. ¶ 89. Although many students fail to obtain an adequate grade point average in order to remain eligible for federal and state funding, Empire's instructors inflate their students' grades, upon pressure from Empire's managerial employees. Id. ¶¶ 90–92. Plaintiff concludes that "[t]his scheme to manipulate student grades constitutes a fraud, affecting a significant amount of federal and state funding recipients at Empire." Id. ¶ 93.

Nowhere in the complaint does Klein identify any students whose grades were inflated, any managerial employees who pressured instructors to inflate grades, or any instructors who actually did inflate their students' grades. Nor does he plead basic factual

details surrounding the grade inflation, such as the time, course, campus location, or amount of grade inflation. Moreover, plaintiff-relator does not proffer any factual connection between Empire's misrepresentations regarding grade point averages and false claims it submitted to the government for payment. Even though plaintiff can allege scienter generally, he cannot "base claims of fraud on speculation and conclusory allegations." Wood ex rel. United States v. Applied Research Assocs., Inc., 328 F. App'x 744, 747 (2d Cir. 2009) (summary order).

Thus, Klein's allegations regarding Empire's fraudulent certification of grade point averages fail under Rule 9(b), and his third cause of action will be dismissed.

### 4. Empire's Student Recruitment Tied to Adverse Employment Action—Fourth Cause of Action

Klein alleges that Empire "compensated or otherwise provided incentives based directly or indirectly on the faculty member's success in securing enrollments through student recruiting." Compl. ¶ 106. According to plaintiff, defendant required faculty members to contact and recruit students who had previously dropped out and to "make representations as to improvements in the institution and as to the student's particular aptitude and ability to complete the course of instruction." Id. ¶¶ 107–09. Moreover, Empire placed on probation and terminated faculty members who failed to meet their student enrollment quotas, "without consideration of any other meaningful performance factor not related to recruiting, enrolling, or awarding Title IV aide." Id. ¶¶ 112–14.[3]

---

[3] Empire first contends that Klein fails to state a claim under Rule 12(b)(6) because the HEA contains a safe harbor provision which allows institutions to make salary adjustments as long as they are "not based solely on the number of students recruited, admitted, enrolled, or awarded financial aid." United States ex rel. Lee v. Corinthian Colls., 655 F.3d 984, 989 (9th Cir. 2011). The HEA safe harbor provision has subsequently been revised and now prohibits salary adjustments "based in any part, directly or indirectly, upon success in securing enrollments or the award of financial aid." 34 C.F.R. § 668.14(b)(22)(ii)(A) (2013). Therefore, educational institutions can no longer "rely on the Safe Harbor Provision to shield compensation programs based directly or indirectly upon recruitment numbers." Corinthian Colls., 655 F.3d at 989, n.1.

(continued...)

Klein does not allege a single instance of a faculty member suffering an adverse employment action solely on account of student recruitment numbers. It is not enough for plaintiff-relator simply to plead that "[f]aculty members which either did not agree to participate in the recruitment of students, or who failed to recruit a sufficient number of students, were the subject of adverse employment actions." Id. ¶ 111. He must, at a minimum, allege: (1) one faculty member who was pressured to recruit students and failed to achieve his set quota; (2) when and where this specific faculty member was the recipient of an adverse employment action, whether a reduction in compensation or termination; and (3) whether Empire's "illegal recruiting activity" was a basis for the adverse employment action. Id. ¶ 114.

As the complaint now stands, Klein has only provided generalized allegations as to Empire's student recruitment policies and the resulting employment actions. Thus, he has failed to state with the particularity required under Rule 9(b) that defendant tied student recruitment to adverse employment actions. Accordingly, the fourth cause of action will be dismissed.

### 5. **Empire's Violations of Massachusetts and New York Law—Sixth and Seventh Causes of Action**

Empire argues that Klein has failed to state a cause of action under either the Massachusetts False Claims Act or the New York False Claims Act. It contends that Klein's state law claims "are subject to dismissal for the same reasons as [his] federal FCA claims," primarily because he "does not identify even a single claim for payment made to either

---

[3](...continued)
Because Klein has failed to plead the fourth cause of action with sufficient particularity under Rule 9(b), however, Empire's contention that he has also failed to state a claim under Rule 12(b)(6) because of the safe harbor provision need not be addressed at this time.

Massachusetts or New York."  Def.'s Mem. 12–13.  Plaintiff responds that paragraphs 6 and 7 of the complaint, which are both incorporated into the Sixth and Seventh Causes of Action, state with particularity that both Massachusetts and New York "have awarded funds or aid to Defendant as a result of the false claims detailed throughout the complaint."  Pl.'s Mem. 18.

Paragraphs 6 and 7 of the complaint, however, do no more than allege that Massachusetts and New York are named as plaintiffs because their respective funds "were and are awarded to the Defendant as a result of the false claims alleged in this Complaint."  Compl. ¶¶ 6–7.  Instead of pointing to any specific funding that Massachusetts or New York provided to Empire, Klein tracks the statutory language of the HEA and Code of Federal Regulations.  Compl. ¶¶ 130–33, 136–39.

Accordingly, Klein's sixth and seventh causes of action will be dismissed.

## C.  <u>Leave to Amend the Complaint</u>

In opposition to Empire's motion to dismiss, Klein requests leave to amend the complaint pursuant to Rule 15(a), should the motion be granted in whole or in part.  Plaintiff asserts that he "can adduce and plead additional facts showing [Empire]'s misrepresentations and fraudulent scheme, if necessary."  Pl.'s Mem. 19.

The liberal amendment policy of Rule 15(a) provides that a district court may give a party leave to amend its pleading "when justice so requires."  When a motion to dismiss is granted pursuant to Rule 9(b), the usual practice is to grant leave to amend the complaint.  <u>Luce v. Edelstein</u>, 802 F.2d 49, 56 (2d Cir. 1986) ("Complaints dismissed under Rule 9(b) are almost always dismissed with leave to amend." (internal quotation marks omitted)).

Empire argues that Klein "has not properly placed his request for leave to amend before this Court" because he has not filed a formal motion for leave to amend the complaint. Def.'s Reply Mem. 10. Defendant also contends that Klein has not complied with Local Rule of Practice 7.1(a)(4), which requires a party moving to amend a pleading to "attach an unsigned copy of the proposed amended pleading to its motion papers." Although defendant is correct, "where a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend." Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006); see also Ronzani v. Sanofi, 899 F.2d 195, 199 (2d Cir. 1990) (holding that district court abused its discretion in dismissing an amended complaint without leave to amend when the plaintiff had offered to amend his pleading in his opposition to defendant's motion to dismiss).

In opposition to defendant's motion, Klein "specifically requested leave to amend should dismissal be granted." Luce, 802 F.2d at 56–57. Moreover, plaintiffs such as Klein who plead fraud "usually . . . [have at least] one opportunity to plead fraud with greater specificity" to satisfy the heightened pleading requirements of Rule 9(b). Id. at 56. If Klein can proffer an amended complaint that pleads particularity in accordance with Rule 9(b), "'he ought to be afforded an opportunity to test his claim on the merits.'" Williams v. Citigroup Inc., 659 F.3d 208, 213 (2d Cir. 2011) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). The "liberal spirit of Rule 15" favors granting plaintiff leave to amend the complaint. Id. at 214.

Therefore, all claims except the fifth cause of action alleging retaliatory discharge will be dismissed without prejudice and with leave to file an amended complaint that cures the pleading deficiencies described above. Plaintiff is advised that his failure to timely file an

amended complaint will result in the dismissal of the first, second, third, fourth, six, and seventh causes of action.

## V.  **CONCLUSION**

Klein has pleaded seven causes of action, six of which lack the particularity required of fraud claims pursuant to Rule 9(b).  Although he has failed to state the circumstances surrounding Empire's alleged fraud and the actions of Does 1–50 with particularity, his allegations indicate serious misconduct which may be actionable under the FCA, the Massachusetts False Claims Act, and the New York False Claims Act.  Plaintiff contends that he is in a position to proffer additional facts and has requested leave to amend.  The liberal amendment policy of Rule 15 favors granting leave to amend here.  If plaintiff fails to file an amended complaint, the first, second, third, fourth, six, and seventh causes of action will be dismissed.

The fifth cause of action alleging retaliatory discharge in violation of the FCA will remain regardless of plaintiff's decision to file an amended complaint or not.  He is reminded however that his amended complaint must be a complete pleading that will replace and supersede the original complaint in its entirety.

The application of United States ex rel. Mikes v. Straus to the higher education context is left for another day.

Therefore, it is

ORDERED that

1.  Defendants Empire Education Corporation and Does 1–50's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) is DENIED;

2. Defendants Empire Education Corporation and Does 1–50's motion to dismiss the First, Second, Third, Fourth, Sixth, and Seventh Causes of Action pursuant to Federal Rule of Civil Procedure 9(b) is GRANTED;

3. Defendants Empire Education Corporation and Does 1–50's motion to dismiss the Fifth Cause of Action pursuant to Federal Rule of Civil Procedure 9(b) is DENIED;

4. The First, Second, Third, Fourth, Sixth, and Seventh Causes of Action are DISMISSED without prejudice; and

5. Plaintiff may file an amended complaint on or before September 12, 2013.

IT IS SO ORDERED.

<br>

_____
United States District Judge

Dated:  August 13, 2013
        Utica, New York

In the event plaintiff fails to file an amended complaint on or before September 12, 2013, an immediate order will be entered dismissing the First, Second, Third, Fourth, Sixth, and Seventh Causes of Action.  Defendants will have until October 2, 2013, to file an answer to the Fifth Cause of Action.

In the event plaintiff files an amended complaint on or before September 12, 2013, defendants will have twenty (20) days from the date the amended complaint is filed to file an answer or a motion to dismiss.